IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal No. **3:19-CR-59-L** |
| | § | |
| **OUI JEE NGUYEN** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant's Motion to Suppress (Search Warrant) Search, Arrest, Statements, Confiscation, Etc. ("Motion" or Motion to Suppress") (Doc. 13), filed April 23, 2019; and Defendant's Motion for Leave to File (Unopposed) Attachment A ("Motion for Leave") (Doc. 16), filed May 24, 2019. After considering the Motion, the evidence submitted by Defendant in support of his Motion, the Government's response to the Motion, and applicable law, the court **denies** Defendant's Motion to Suppress (Search Warrant) Search, Arrest, Statements, Confiscation, Etc. (Doc. 13). For the reasons herein explained, the court also **denies** Defendant's Motion for Leave to File (Unopposed) Attachment A (Doc. 16), in which Defendant requests to file a reply in support of his Motion to Suppress, and does not consider Defendant's proposed reply in ruling on his Motion to Suppress.

**I.     Motion to Suppress**

    **A.     Factual and Procedural Background**

Defendant Oui Nguyen ("Defendant") contends that the December 12, 2017 search of his mother's residence located at 422 Pebblecreek Drive, Garland, Texas 75040 ("422 Pebblecreek" or "the Premises"), where he resided,[1] was conducted pursuant to a "bare bones" and stale federal

---

[1] Defendant does not admit to residing at 422 Pebblecreek, but he also does not dispute residing at this address, and the record contains sufficient evidence to establish that he resided at this location where the evidence leading to his arrest in this case was discovered in his bedroom inside the Premises.

**Memorandum Opinion and Order – Page 1**

search warrant. He, therefore, maintains that all evidence seized during the search should be suppressed because the warrant is not supported by probable cause, and the Government is not entitled to rely on the good-faith exception to the exclusionary rule. Specifically, Defendant requests that the court suppress "the entry, [his] arrest, statements, confiscation of the contraband (firearm) and all other evidence" obtained as a result of the allegedly illegal search. Def.'s Mot. to Suppress 9.

The warrant to search 422 Pebblecreek Drive was issued by a federal magistrate judge based on the 21-page affidavit of United States Postal Inspector G.C. Carter ("Carter"), who averred, based on his knowledge and experience, that persons involved in drug trafficking and related money laundering often maintain financial and other crime-related information and records in their residences or the residences of coconspirators for long periods of time; that large-scale drug traffickers frequently maintain on hand large amounts of cash to finance their drug trafficking business; and that drug traffickers often place drug proceeds and assets in the names of others or legal entities to avoid detection and seizure of the assets by law enforcement. Carter also describes an investigation by the United States Postal Inspection Service, the Texas Department of Public Safety ("DPS"), and the Irving Police Department of a criminal organization led by Hung Phan ("Phan") and other coconspirators that involved the illegal drug trafficking of marijuana purchased in the state of Washington and shipped using the United States mail and other means, money laundering of the drug proceeds, and other related illegal activity to facilitate the criminal enterprise.

Carter's affidavit describes facets of that investigation that led him and law enforcement to believe that Defendant's mother Men Quach ("Quach") was involved in the illegal distribution of marijuana and money laundering. According to Carter's affidavit, the entirety of the investigation,

which commenced in the summer of 2016 and culminated in the arrests of Phan, Quach, and other coconspirators in December 2017,[2] showed that Quach was in frequent, ongoing contact with Phan and other coconspirators; she moved packages of marijuana and/or cash; she was arrested during a traffic stop on April 4, 2017, and found to be in possession of a large quantity of marijuana after being observed earlier that day meeting outside of the residence of coconspirators Helena Truong ("Truong") and Phuong Phan, and giving Truong a cardboard box, small shopping bag, and a "white plastic flex trash bag" that contained several rectangular-shaped packages similar in appearance to marijuana packages that law enforcement had previously seen in this and other cases;[3] and text messages recovered from Phan's cell phone in July 2016 indicate that Quach was involved in the conspiracy since its inception.

In addition, Carter's affidavit indicates that a "trash pull" was conducted on November 17, 2017, at 422 Pebblecreek. As a result of this "trash pull," a utility bill addressed to Quach at 422 Pebblecreek Drive was uncovered. From this and prior surveillance, law enforcement determined that Quach resided at this address, the same address where Defendant was arrested and approximately 25 pounds of marijuana and $50,000 was seized on January 21, 2016, by the Garland Police Department ("GPD"), according to a GPD report obtained by a DPS agent in August 2016. The "trash pull" also revealed several cash purchases and deposits by Quach in October 2017 totaling

---

[2] Phan, Quach, and eight other coconspirators are defendants in *United States v. Hung Thai Phan, et al.*, 3:17-CR-634-B.

[3] Carter states that, during a search of Truong's and her soon-to-be husband Phuong Phan's apartment after Quach's arrest, 24 pounds of marijuana and firearms were found. An additional quantity of marijuana was also found in a cardboard box that was recognized as being the same FedEx parcel that law enforcement officers had observed Phuong Phan retrieve from another location and deliver to the apartment a few days earlier. Carter further notes that, "in the trash can in the apartment, a FedEx mailing label was recovered that had been removed from the box that []Quach had in her vehicle [when she was arrested], the same box that Phuong Phan picked up from the Mail and Copy [Commercial Mail Receiving Agency] just hours prior." Carter Aff. 10.

**Memorandum Opinion and Order – Page 3**

approximately $5,000, despite Carter's confirming with the Texas Work Force Commission that Quach had not had any legitimate employment for the past 10 years. Based on this information and her prior but recent interactions with other coconspirators, Carter states in his affidavit that he believed, based on his prior training and experience, that Quach was still receiving and distributing marijuana, and that evidence of the drug trafficking described in his affidavit and related money laundering would be located at her residence. He believed that such evidence would include illegal drugs, firearms, financial and other records evidencing drug trafficking and money laundering; similar information stored on computers, cell phones, and other electronic devices; drug proceeds in the form of currency or other valuable property, including vehicles; and information regarding customers and coconspirators.

The search of 422 Pebblecreek was conducted by law enforcement on December 12, 2017, pursuant to the search warrant issued by United States Magistrate Judge Paul D. Stickney on December 11, 2017. According to the Government, police officers recovered approximately $29,000 in cash in Quach's bedroom, which she admitted was drug proceeds. Although the search warrant was issued as a result of law enforcement's investigation of his mother's conduct, police officers, according to the Government, also found a firearm, an unspecified amount of cash, and marijuana in Defendant's bedroom located inside the residence at 422 Pebblecreek.

As a result of the search conducted on December 12, 2017, Defendant was arrested and charged in a related state case with the unlawful possession of a firearm by a felon. In a suppression hearing in the state case, Defendant filed a motion to suppress, which was granted in a one-page order without discussion on March 8, 2019. On February 5, 2019, Defendant was indicted in this District for the federal offense of Felon in Possession with a Firearm, in violation of 18 U.S.C. §§

922(g)(1) and 924(a). The Motion to Suppress that is the subject of this opinion was filed April 23, 2019, to which the Government filed a response in opposition on May 10, 2019. Thereafter, Defendant filed his Motion for Leave, in which he requests to file a reply in support of his Motion to Suppress.

B.     Applicable Law

"The suppression or exclusionary rule is a judicially prescribed remedial measure . . . [that] reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" (internal citations omitted)). *Segura v. United States*, 468 U.S. 796, 804 (1984). In evaluating the sufficiency of a search warrant, the court first determines "whether the good-faith exception to the exclusionary rule applies." *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997). Under the good-faith exception to the exclusionary rule, "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992) (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)).

The court applies a two-part test in determining whether evidence should be suppressed under the exclusionary rule. The court first asks whether the good-faith exception to the rule applies, and then asks whether the search warrant was supported by probable cause. *United States v. Mays*, 466 F.3d 335, 342-43 (5th Cir. 2006) (citation omitted). In determining whether the good-faith exception applies, the court is limited "to the objectively ascertainable question [of] whether a reasonably

well[-]trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 923 n.23.

Generally, "[i]ssuance of a warrant by a magistrate" is sufficient "to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant," *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988), unless: (1) "the magistrate issuing the warrant was intentionally or recklessly misled by the affiant on whom he [or she] relied"; (2) the magistrate "wholly abandoned his [or her] judicial role and acted as a part of the law enforcement team, rather than as a check on its zeal"; (3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable"; or (4) the warrant itself was "so facially deficient, for instance, so lacking in particularity, that an officer would be unreasonable to rely on it." *United States v. Davis*, 226 F.3d 346, 351 n.1 (5th Cir. 2000) (citations and internal quotation marks omitted). The judge who issues the search warrant may rely on his common sense and "draw reasonable inferences from the material he receives," and reviewing courts give great deference to the issuing judge's determination regarding the adequacy of the affidavit. *Id.* (quoting *United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987)). The initial burden is on the defendant to establish that the law enforcement officers were not protected by the good-faith exception to the exclusionary rule. *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002).

In *United States v. Robinson*, the Fifth Circuit explained that a "bare bones" affidavit will not support a finding of good faith:

> An officer is not entitled to invoke the good faith exception if the affidavit upon which the warrant is founded is a "bare bones" affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." A "bare bones" affidavit contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable

cause." Whether an affidavit is a bare bones affidavit is determined by a totality of the circumstances.

741 F.3d 588, 597 (5th Cir. 2014) (citations omitted).

*Robinson* explained that stale information will similarly not support a finding of good faith:

Stale information cannot be used to establish probable cause. When evaluating the staleness of information in an affidavit, this Court considers the particular facts of the case, including the nature of the unlawful activity and of the evidence sought, especially whether the evidence "is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched."

*Id.*; *Craig*, 861 F.2d at 823. Another consideration in evaluating the staleness of information is whether the search warrant affidavit includes information regarding a "long-standing, ongoing pattern of criminal activity." *Id.* at 822. If so, the information need not be regarded as stale. *See United States v. Bonds*, 497 F. App'x 426, at *2 (5th Cir. 2012) (per curiam) (unpublished) (citing *Craig*, 861 F.2d at 823).

### C. Analysis

Defendant does not contend that the magistrate judge was intentionally or recklessly misled by Carter's affidavit; nor does he contend that the magistrate judge wholly abandoned his judicial role and acted as a part of the law enforcement team. Defendant, instead, contends that the good-faith exception to the exclusionary rule does not apply because of the "deficient 'bare bones' language" and "staleness" of the information in the search warrant affidavit. In this regard, Defendants asserts as follows:

> 1. Defendant has been charged with the offense of FELON IN POSSESSION OF A FIREARM based on a Search Warrant entry and arrest at 422 Pebblecreek Dr. Garland, Texas.

2. On or about 12/12/2017, Law enforcement officials entered the residence, with a Federal Search Warrant (Exh.1) and approached, detained, searched and later arrested Defendant in DALLAS COUNTY, Texas.

. . .

7. In [the search warrant] affidavit, there are no protracted or continuous facts of illegality concerning 422 Pebblecreek Dr. Garland, Texas.

14. In Exh.1, the affidavit discussed alleged activity in July-August 2016, November 2016, April 2017, and November 2017. However, although there was some activity in July and August 2016 showing possible PC, it fell off thereafter.

15. The information from April 4, 2017 provides only that a manager at CMRA on Campbell [R]oad in Dallas called the affiant and stated that they received "another box" consistent with the pattern of possible narcotics that were being received by Phuong Phan who was the box holder of #141.

16. There is no indication what this means. Did the box smell like marijuana? Was there marijuana coming out of the box? Did the box have an image of a marijuana plant on it? Next, the affiant alleges that Phuong Phan was observed by law enforcement picking up the box. He drove back to his residence (which was NOT 422 Pebblecreek Dr.), which he shared with codefendant Helena Truong. He then entered his residence. No additional relevant information was provided from April 2017.

17. <u>Significantly, Phuong Phan does NOT live at 422 Pebblecreek Dr. nor is there any information linking him to 422 Pebblecreek Dr.</u>

18. The affidavit jumps to November 2017 in which the affidavit discusses evidence of three cash deposits of $2,500, $800, and $800 found in the trash at 422 Pebblecreek. And, it references a Texas Workforce Commission search showing that Men Qua[c]h has not been employed by an "outside source" in the last 10 years. This alone gives no information about an actual marijuana operation. Moreover, such cash deposits are minimal, minuscule and inconsistent when considering the large amounts of cash exchanged in a bona fide drug operation. Further, the deposits are not indicative of structuring or any other illegality and are as consistent to a being a homemaker.

19. <u>NO actual drugs / controlled substances, paraphernalia, accoutrements of marijuana sales, etc. were found in this single trash run</u>.

20. Additionally, the controlling case for 'trash-run law' is *California v. Greenwood*, 486 U.S. 35 (1988). The U.S. Supreme Court discussed privacy interests at length and inferred that multiple positive trash runs gave PC for issuance of a search warrant. *Greenwood* involved officers finding contraband on multiple occasions. Importantly, the officers were able to independently substantiate the tip that led to the house (and subsequent discovery of drugs in the trash cans multiple occasions). Therefore, it is instructive that any multiple trash run discoveries also have independent and further verification that controlled substances will be located inside the residence.

21. The Court explained further that "garbage containers left outside a residence for collection are readily accessible to the public, neighbors, passers-by and other unwelcome meddlers". Just as importantly, there is nothing in Exh.1 that would enable the magistrate to determine how long the trash had sat in the roadway or facts listed showing large quantities of drugs involved to support an inference that contraband probably remained in the residence.

22. The affidavit was submitted on December 11, 2017.

23. This affidavit effectively had no information showing possible PC to 422 Pebblecreek Dr. and after August 2016. The affidavit was submitted on December 11, 2017, which is a difference of 16 months. When the court considers the nature of the alleged criminal activity (a 'garden variety' and 'plain vanilla' marijuana receiving and selling operation) and type of evidence sought (evidence of the operation), the time elapsing between the occurrence of the events stated in the affidavit and when the search warrant was issued (16 months between the last possible activity of possible probable cause and the warrant being signed), there is no evidence of facts indicating activity of a "protracted and continuous nature" (a continuing course of conduct) of a marijuana receipt-and-selling operation.

24. As this Court already knows, there are a myriad of tools available to law enforcement for investigative purposes and to establish PC for a search warrant such as: a) Knock and Talks; b) Buy / Busts; c) Electrical checks (for a potential 'grow house'); d) Legal 'pull overs' of guests or occupants driving away from the location; e) Pole cameras; f) Confidential Informants; g) Wiretaps, etc. None of these basic resources were utilized nor was there any evidence of a "protracted and continuous" marijuana operation.

Def.'s Mot. to Suppress ¶¶ 1, 2, 7, 14-19-24. Based on the foregoing and the legal authority cited in his Motion, Defendant appears to contend that the bare bones and stale nature of the activity alleged in the search warrant affidavit preclude application of the good-faith exception because the

warrant was based on an affidavit "so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable"; and the warrant itself was "so facially deficient" or "lacking in particularity, that an officer would be unreasonable to rely on it." *Davis*, 226 F.3d at 351 n.1.

The Government disagrees and responds that, while Carter's affidavit may not disclose every fact known to the investigating officers, it includes extensive information that, contrary to Defendant's assertion, is not conclusory or vanilla in nature. The Government contends that the affidavit sets forth details regarding the lengthy, ongoing investigation by law enforcement that involved multiple persons, the criminal activity in which they engaged, and the locations where criminal activity was observed, including 422 Pebblecreek, which was determined to be the residence of Defendant's mother, Quach. The Government further asserts that the November 15, 2017 "trash run" or "trash pull" at Quach's residence "refreshed" the probable cause for Quach, as well as 422 Pebblecreek. In addition, the Government argues that the lengthy ongoing investigation of the criminal activity in this case weighs against a finding that information in the affidavit was stale due to delay. Additionally, the Government disagrees that the holding in *California v. Greenwood* is controlling and contends that this case did not establish a rule requiring a minimum number of "trash runs" to establish probable cause. The court agrees.

Carter's affidavit regarding the criminal drug trafficking and money laundering enterprise, including Quach's involvement, is quite detailed and not based on the type of conclusory statements that would be considered "bare bones." Moreover, while Defendant focuses on the length of time between August 2016, when he was arrested after law enforcement seized drugs and a large amount of currency from his residence located at 422 Pebblecreek, and the issuance of the warrant in December 2017 to search 422 Pebblecreek, Carter's affidavit includes information that implicates

Defendant's mother, Quach, in a continuing pattern of drug and money laundering activity since the inception of the conspiracy on or about 2016 through November 2017. Defendant argues "there are no protracted or continuous facts of illegality concerning 422 Pebblecreek," but it is reasonably inferable from Carter's affidavit regarding Quach's continued involvement in the criminal drug and money laundering activity, even after the seizure of drugs and currency at her residence, that evidence of that activity would be located at her residence at 422 Pebblecreek. *See United States v. Robinson*, 741 F.3d 588, 597, 2014 WL 274427 (5th Cir. 2014) *("The requisite nexus between the location to be searched and the evidence sought can be shown by 'direct observation' or by 'normal inferences as to where the articles sought would be located.'").*

That the "trash pull" in November 2017 did not uncover drugs or drug related paraphernalia is not dispositive, as Carter states in his affidavit, based on his experience and training, that the financial information discovered during the "trash pull" of cash payments and deposits as recent as October 2017, which totaled approximately $5,000, was indicative of illegal drug trafficking and money laundering because there was no record that Quach had any legitimate employment for the past 10 years. In addition, the items sought to be seized from Quach's residence were not limited to drugs or drug paraphernalia, but they also included financial and other records evidencing drug trafficking and money laundering, drug proceeds in the form of currency or other valuable property, and information regarding customers and coconspirators. Carter stated in his affidavit that such evidence would likely be located at Quach's residence because persons engaged in drug trafficking and money laundering often keep this type of information and property at their residences or the nearby residences of trafficking associates or relatives for ready access and concealment purposes,

and they often retain related records for long periods of time. Thus, the information in the affidavit had a sufficient indicia of probable cause that an officer in good faith could have relied on it.

Likewise, Carter's affidavit provided a sufficient basis for the magistrate judge to find that there was probable cause to search the Premises, given the totality of the circumstances, including: the nature of the investigation and the evidence sought; the ongoing criminal activity of Quach, who resided at 422 Pebblecreek; and the items recovered from the trash at 422 Pebblecreek in November 2017. Accordingly, Defendant has failed to satisfy his burden of establishing that Carter's affidavit upon which the search warrant was based was "so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable" or was "so facially deficient, for instance, so lacking in particularity, that an officer would be unreasonable to rely on it," *Davis*, 226 F.3d at 351 n.1 (citation omitted), and the court determines that the good-faith exception to the exclusionary rule applies.

As noted above, Defendant also contends that Phuong Phan did not reside at 422 Pebblecreek, and there is no information linking him to that address. In addition, he suggests that the statements in the search warrant affidavit about law enforcement being notified by CMRA that it had received "another box consistent with the pattern of possible narcotics that were being received by Phuong Phan who was the box holder of #141" are conclusory and insufficient to establish probable cause to search 422 Pebblecreek. Def.'s Mot. ¶¶ 15-16 (discussing Carter Aff. ¶ 13). If the search warrant affidavit for 422 Pebblecreek was based only on this information, the court would agree that it would be insufficient. This information, however, is but one piece of information that makes up the pattern of jointly undertaken criminal activity described in Carter's affidavit that was not limited to Phuong Phan or his soon-to-be wife Helena Truong. Carter's

affidavit also linked this package to Quach, *see supra* n.2 (quoting Carter Aff. 10), and, for the reasons already explained, the affidavit contained sufficient facts to establish probable cause that evidence of drug trafficking or money laundering would be found at Quach's residence located at 422 Pebblecreek. Moreover, whether Carter's affidavit is bare bones as argued by Defendant must be determined by considering the totality of the circumstances, not viewing facts in isolation.

Further, Defendant's contention based on *California v. Greenwood* does not affect the court's foregoing determination. As explained by other courts that have previously addressed this issue, there is no per se requirement that law enforcement conduct multiple trash runs, and "[t]here is no magic number of 'trash runs" that must be conducted before the issuance of a search warrant. *United States v. Medrano*, 4:11-CR-10(1), 2012 WL 32945, at *3 (E.D. Tex. Jan. 6, 2012), *report and recommendation adopted*, 2012 WL 194392 (E.D. Tex. Jan. 23, 2012) (citing *United States v. Hopkins*, 3:99-CR-324-D, 2000 WL 20986, at *3 (N.D. Tex. Jan. 13, 2000)). For the reasons explained, the totality of the facts in Carter's affidavit provide a sufficient basis to establish probable cause. The court will, therefore, deny Defendant's Motion to Suppress.

## II.     Motion for Leave

Defendant seeks leave to file a reply in support of his Motion to Suppress. As Defendant acknowledges, the court does not allow reply briefs to be filed as a matter of course. The arguments raised in Defendant's proposed reply could have been anticipated and raised in Defendant's Motion to Suppress, as the Government's response is limited to issues raised in his Motion to Suppress. None of the legal authority in the reply is new, and Defendant's arguments regarding the rulings and timing of events that have taken place in the related state criminal proceeding have no bearing on this case or whether the court should grant or deny the Motion to Suppress. Accordingly, the court

will not entertain any further arguments moving forward that are based on the proceedings in the state criminal case, and counsel shall refrain from making any such irrelevant arguments, as doing so will not advance his client's defense and will only unnecessarily delay the proceedings in this case. Even if the court considered Defendant's proposed reply, it would not change the outcome of his Motion to Suppress. The court will, therefore, deny the Motion for Leave.

### III. Conclusion

For the reasons explained, the court **concludes** that the good-faith exception to the exclusionary rule applies, and, while the court did not consider Defendant's proposed reply, doing so would not have changed its ruling on his Motion to Suppress. Accordingly, the court **denies** Defendant's Motion to Suppress (Search Warrant) Search, Arrest, Statements, Confiscation, Etc. (Doc. 13); and **denies** Defendant's Motion for Leave to File (Unopposed) Attachment A (Doc. 16).

**It is so ordered** this 28th day of June, 2019.

Sam A. Lindsay
United States District Judge